Montgomery vs. Evans.

No. 30.—James Montgomery, administrator, *de bonis non*, of
Reuben B. Davies, deceased, plaintiff in error, *vs.* John
Evans, defendant in error.

[1.] A, as the agent of B, deposits a sum of money with C, with request that
ho will keep it until B returns home, (he being absent from the State,) and
then pay it to him—which C agrees to do: *Held,* that C is a depository,
and not liable to be sued by B for the money, until after a request.

[2.] Where a request is a condition precedent to liability, it must bo spe-
cially averred in the declaration, with time and place, and by whom and
on whom made. It must be so set forth, as that the Court may judge
whether it is made according to the contract,

[3.] In an action by B against C, for the money deposited with C by A, as
the agent of B: *Held,* that A is not a competent witness for the plaintiff, to
prove the liability of C.

[4.] It is error in the Court, to instruct the Jury in relation to a matter of
fact, about which there is no evidence.

Assumpsit, &c. in Crawford Superior Court. Tried before
Judge Floyd, August Term, 1849.

This was an action brought by John Evans against Montgom-
ery, as the administrator of Reuben B. Davies, to recover one
hundred and fifty-seven dollars, deposited by Elijah Evans, as al-
leged, with the intestate during his life, for the use of John
Evans.

The plaintiff first proved by John Evans, Sr. that he was pres-
ent when the money was deposited for John Evans, who was
then in Mississippi. Plaintiff then offered the testimony of Elijah
Evans, taken by commission, who swore that he, as the agent of
John Evans, deposited the money with Davies, for Evans.

Defendant's counsel objected to this evidence, on the ground,
that as agent, he was liable for the money to John Evans, and
" was interested in shifting the burden from himself, and placing
it on defendant."

The Court overruled the objection—and this is the first deci-
sion complained of.

The defendant then objected to the following interrogatory, as
being leading and irrelevant :

" Look at the annexed account, and say if it was made out by

you—and if yea, how came you to make out your account, and prove it in your own name ? Were you, or not, acting as the agent of John Evans—and were you not told that the account should be made out in that way—and was it not so done through mistake ?"

The account referred to was made out for the same money, as due to Elijah Evans.

In answer to this interrogatory, the witness stated he made out the account thus by the advice of defendant.

The Court overruled this objection—and this decision is alleged as error.

Other evidence was introduced, to prove the same facts, as already stated.

Defendant then moved to dismiss the case, on the ground, that no demand was proven to have been made on the intestate or his representative. Elijah Evans, the witness, had demanded the money as his *own*—at least, he had sworn to it in an account, as due to himself, and ordered suit if not paid; and said suit was brought, and then dismissed by plaintiff. The Court overruled this motion, and defendant excepted.

The Court charged the Jury, that it was necessary for plaintiff to prove a demand, in order to recover ; and they might look into the testimony to ascertain if this fact was proven—to which charge, defendant excepted, on the ground, that no such evidence had been before the Jury.

The defendant moved for a new trial, on the several grounds of error alleged; and farther, because the verdict was contrary to the evidence. The Court overruled this motion, and defendant excepted.

And on these several exceptions, error is assigned.

HALL and GREENE, for plaintiff in error, cited—

*Nisbet vs. Lawson,* 1 *Kelly,* 282, 283. *Sage vs. Sherman,* 25 *Wend.* 426. *Story on Agency,* §§218, 247. 1 *Greenl.* §51. 1 *Chitty,* 244, '5, 285. *Story on Bailment,* §§107, 103, 105. *Paschal vs. Davis,* 3 *Kelly,* 256. *Graham on New Trials,* 278, 262, 362, 326, 237, 271.

HUNTER, for defendant in error, cited—

*Chitty on Contracts,* 231, (*and note* 1,) 733.   6 *Ga. Rep.* 365, 213, 276, 324.   1 *Kelly,* 392, 580.   4 *McCord,* 412.   *Graham on New Trials,* 284.

*By the Court.*—NISBET, J. delivering the opinion.

[1.]  The counsel for the defendant moved on the trial, that the plaintiff be non-suited, because there is no allegation in the declaration, that a demand had been made on the defendant's intestate or his representatives, after his death, of the money sued for. Whether such averment was necessary, depends upon the question, whether the defendant is liable without such demand.   If he is not—if the demand is a condition precedent to his liability— I apprehend it will be conceded that the averment was indispensable.   To determine this question, we must look to the character of the deposit out of which the action grew.   By two of the witnesses, it is proven that Elijah Evans, as the agent of John Evans, delivered to R. B. Davies, in his lifetime, from $150 to $160, for John Evans.   The testimony most favorable to the plaintiff, is that of the witness, Montgomery ; and I take his evidence as determining the character of the transaction.   He swears that " Elijah Evans deposited with Davies between $150 and $160 of money belonging to John Evans, and requested him to pay the same to John Evans, upon his, John Evans', return home, which Davies agreed to do."   At the time of this deposit, John Evans was absent, on a visit to the State of Mississippi.   This action is brought by John Evans, against the administrator of R. B. Davies, who died shortly after the deposit, for the money.   The delivery of this money by John Evans, through Elijah Evans, his agent, to Davies, was, to our apprehension, a bailment, under the class *deposit.*   A deposit is defined to be " a bailment of goods, to be kept by the bailee without reward, and delivered according to the object or purpose of the original trust."   *Story on Bailment,* §§ 41, 42.   The delivery, in this case, if not a deposit, must belong to the class *mandate ;*  at least, if not a deposit, I do not see that it assimilates at all to any bailment, but that of *mandate.*   If not a mandate, it must, then, be a deposit ; but it is not a mandate—therefore, it is a deposit.   Without the aid, however, of a syllogism, I think it is demonstrable that this is a deposit.   A mandate " is a bailment of goods, without reward, to be carried

from place to place, or to have some act performed about them."
*Story on Bailment*, §5.   The difference between a deposit and a
mandate, according to Sir William Jones, is, that the latter lies in
feasance, and the former in custody.   *Jones on Bailm.* 53.   That
is to say, the depository is charged with *keeping* the goods only,
and the mandatory with *doing something with or about them.*
Mr. Story, holding that custody involves feasance, and feasance
custody, excepts to Sir Wm. Jones' distinction, and says, " the
true distinction between them is, that in case of a deposit, the
principal object of the parties is the custody of the thing, and the
service and labor are merely accessorial.   In the case of a man-
date, the service and labor are the principal objects of the par-
ties, and the thing is merely accessorial."   *Story on Bailm.* §140.
The American jurist, I think, has the advantage of the British
scholar, in fulness.   The object of a mandate is, that the thing
bailed may be transported from point to point, or that something
be done about it.   The object of a deposit is, that the thing be
kept, simply.   Without elaborating these distinctions, it is already
seen, that this is a deposit.   This money, delivered to Davies,
was not to be carried anywhere, nor was anything to be done
concerning it.   By the evidence, the money was deposited with
Davies, with a request to pay it to John Evans, upon his return
home; which he agreed to do.   It was a contract of deposit.
*There was a delivery, an undertaking to keep it until Evans re-*
turned home, and then to pay it to him.   It would be a very un-
reasonable construction of the undertaking to pay it to Evans
when he returned home, that it involves the obligation to carry it
to him—to make a tender of it—in order to protect Davies from
liability to suit.   Davies had no interest in the matter; the cus-
tody of the money was assumed for Evans' benefit; and at the
moment Evans did arrive, the money was then in Davies' hands,
as his depository.   Before he returned, no one had a right to de-
mand it.   When he returned, Davies held to him the relation of
depository.   Suppose there had been nothing said about paying
the money to Evans when he returned, but the deposit had been
simply for Evans, when he returns—the obligations of Davies
would then have been just what they now are.   He would have
been bound to pay it to him upon demand—that is just his obli-
gation now.   Mr. Davies, then, was a depository; that is his
legal character; a deposit is the legal character of the transaction.

What, then, under the law, are his obligations? They are two. First—it was his duty to keep the money with reasonable care. Nothing need be said about this obligation, for it is not sought to charge him for want of care. Second—it was his duty, *on request*, to deliver it, according to the trust. His obligation, by the terms of the trust, was to pay it, that is, deliver it, to Evans, upon his return. He was bound to deliver it on request; and upon refusal so to do, and not until then, has he violated his contract; and not until then was he liable to be sued for it. Such is the law which governs this species of bailment. If the request was preliminary—a condition precedent to liability—it was indispensable to aver it, and also indispensable to prove it. The exception to the declaration was well taken, and the plaintiff ought to have been non-suited.

As to the necessity of request, see *Story on Bailm.* §§61, 107. *Brown vs. Cook,* 9 *Johns. R.* 361. *Hofmer vs. Clarke,* 2 *Green-leaf's R.* 308. 1 *Dane's Abr. ch.* 17, *art.* 1, 2. 2 *Black. Com.* 452. *Pothier's Traite, de Depot, n.* 22. As to the necessity of averring and proving a request, see *Com. Dig. Pleader, c.* 69. 1 *Saunders R.* 33, *n.* 2. 5 *B. & Ald.* 712. 1 *D. & R.* 361, *S. C.* 1 *Taunt.* 572.

[2.] The presiding Judge instructed the Jury, that it was necessary to prove the request in this case. He must, therefore, have believed that it was sufficiently averred. In looking into the declaration, I find no averment but the usual formal averment—"although often requested." Where request is a condition, as in this case, precedent to liability, that is not sufficient. The request must be so set forth, as that the Court may judge whether it is sufficient, according to the contract. *Hardw.* 38. *Skin.* 39. *Saund. on Plead. and Ev.* 1 *vol.* 131. 1 *Chitty Plead.* 244, '5. 1 *Greenl. Ev.* §51. It must be stated, with time and place, and by and upon whom made. 3 *Bulst.* 298. *Wallis vs. Scott,* 2 *Stra.* 88. *Back vs. Owen,* 5 *T. R.* 409. *Com. Dig. D. Plead. c.* 69.

[3.] Elijah Evans was called to prove the deposit of the money with Davies, and the terms and circumstances of the deposit. His testimony was excepted to, upon the ground of interest, and the exception overruled; and that is assigned for error. The witness was called to establish the liability of the defendant—to prove the payment, by him, of a sum of money belonging to the

plaintiff, to the defendant's intestate.   In the absence of all such proof, the agent (the witness) would be himself liable to the plaintiff, his principal, for the money of his principal.   He is called to fix a liability upon another, which, if established, would discharge himself.   He is, therefore, interested.   If there is a re-covery for the plaintiff, I see no reason why that recovery could not be pleaded in bar of an action against him, for the same mo-ney.   This point is fully settled in *Nisbet vs. Lawson,* 1 *Kelly R.* 282.

[4.]   The presiding Judge, as before stated, instructed the Jury that a request was necessary to be proven, and that they might look into the testimony to ascertain if it was proven, and if they were satisfied that a demand was proven to have been made by Elijah Evans upon Wm. L. Johnson, the former administrator upon Davies' estate, then they would find for the plaintiff—and if not, they would find for the defendant.

Exception is taken to this charge, as being made in relation to a demand, about which there was no testimony.   I have looked carefully into the evidence, and find no testimony whatever in re-lation to a demand by the plaintiff.   This being true, it was error to instruct the Jury to look into the evidence, and if they found the demand proven, to find for the plaintiff, and if not, for the de-fendant.   It has been, over and over again, decided by this Court, that it is error to instruct the Jury in reference to a matter of fact, about which there is no evidence.   The language of the Judge is, that if they believed that a demand was made by Elijah Evans, they should find for the plaintiff.   This was wrong, in any view of it.   If he intended to be understood to instruct them, that if a demand was made by Elijah Evans, as the agent of John Evans, they should find for the plaintiff, he ought to have so expressed himself; but he does not.   From what he does say, the Jury could have believed nothing else, but that he meant, that a demand by Elijah Evans, in his own right, would be sufficient to authorize the plaintiff to recover.   If he is to be understood as assuming that the agency of Elijah Evans, in making a demand, was proven, the charge is equally erroneous; because there is not a particle of evidence to prove that agency. The agency of Elijah Evans, in *making the deposit,* is proven ; but so far from his agency in making a demand being proven, or there being any testimony to prove it, the reverse is true.   The

demand which was made, and the only demand about which there is any evidence, was made by Elijah Evans, in his own right. He presented to Davies' administrator the account, made out in his own name—swore to it—and suit was actually brought upon it, in his name. All the evidence, in addition, as to demand, was irregularly admitted, because there was no demand averred.

Upon these grounds, let the judgment of the Court below be reversed.