Opinion of the Court—Thayer, J.

14 494
14 576
17 243
18 299
21 146
22 568
13* 289
13* 447
21* 131
22*1080
27* 94
30* 431

14 494
37 581

14 494
45 220

[Filed February 19, 1887.]

## ANNIE E. BREON v. JOSEPH HENKLE.

SEDUCTION—PARI DELICTU—MEASURE OF DAMAGES. (PER THAYER, J.)—The statute giving to an unmarried female over twenty-one years of age a right of action for her own seduction, was not intended to apply to cases where the parties are equally guilty, but only to those where the defendant has been mainly instrumental in occasioning the wrong; and in such case the measure of damages is the plaintiff's entire loss, pecuniary, and in reputation and character.

SAME—INSTRUCTION TO JURY.—In an action by an unmarried female for her own seduction, an instruction that "if the jury should find that the defendant did, through enticement or persuasion or artifice, overcome the plaintiff's reluctance and scruples, and thereby induced her to have unlawful intercourse with him, then they should find for the plaintiff," is too vague. They should have been told that the respondent could not recover, unless it appeared from the evidence that the appellant employed such artifice or deceit as was calculated to mislead a virtuous woman, and that the plaintiff was misled in consequence thereof, and thereby seduced; and the character of the reluctance and scruples to be overcome should have been explained.

SAME.—In such case it was error to refuse to instruct the jury that "the plaintiff cannot recover in the action if the sexual intercourse between her and the defendant was with her consent, unless that consent was obtained by false promises, or by some artifice or device by which she was deceived or misled."

SAME—ABSTRACT PROPOSITION—ERROR.—(PER STRAHAN, J.)—The principle is without exception, that when a trial court charges the jury upon matter which is material to the cause, and upon which there is no evidence, the charge is necessarily erroneous and misleading.

LORD, C. J., dissenting.

WASCO COUNTY.　Defendant appeals.　Reversed, and new trial ordered.

*F. P. Mays*, for Appellant.

*F. R. Strong*, for Respondent.

THAYER, J.—The respondent brought an action against the appellant in the court below, to recover damages for an alleged seduction.　She averred in her complaint that on and prior to August 1st, 1882, she was of chaste character and good reputation, residing at the Dalles, in Wasco County; that upon said date the appellant seduced, debauched, and carnally knew her, by reason whereof she became pregnant and sick with

child, was disabled from work, was obliged to expend for cure and medical attendance sums of money amounting to $500, and that by suffering in body, mind, character and reputation, she was damaged in the further sum of $10,000. The appellant in his answer denied the seduction and all the allegations of the complaint, except that of having had sexual intercourse with the respondent.

The action was tried by jury.

The respondent was a witness in her own behalf, and testified that she was 28 years of age ; had been twice married and divorced; that she had had two children by these marriages; that she had never seen the appellant till about April, 1882; that her acquaintance with him from that time to the first of August of the same year—the date of the alleged seduction— was very slight, amounting only to a few casual meetings and brief calls, during which he treated her respectfully, and his demeanor was that of a " perfect gentleman " ; that on the evening of August 1st, there having been, down to that time, nothing between them beyond a merely formal acquaintance, appellant called upon her at her room in a place called the " Palace Lodging House "—where she had previously invited him to call—and after some general conversation, went out and bought some beer, of which both drank, she taking but little, and he drinking " an entire glass " ; that immediately after drinking the beer, appellant " grabbed her and fought with her, and she protested and fought until she had no strength " ; that *during the struggle* he " promised to marry her and made every promise," but she still refused to yield to his embraces, and he had carnal knowledge of her by violence, to which she never did consent; " that while she and the defendant were struggling and fighting he made considerable noise, and she begged him not to make so much noise, because the other rooms in the lodging house were occupied, and the noise would attract the attention of those in the other rooms " ; that he remained in her room for some time longer, during which time he again had carnal knowledge of her, but the circumstances of this second occasion she did not recollect ; that he left before

morning; and that he never at any other time had sexual intercourse with her; that he spent the next evening with her in her room, but nothing improper occurred.

The appellant was also a witness, in his own behalf; and while he admitted the illicit intercourse, put an entirely different phase upon the transaction; according to his statement, the connection was by mutual consent; that he remained over night with the respondent, both occupying the same bed; and that in the morning he gave her $20; that about the 1st day of August he spent two nights with her at her room, both occupying the same bed as before; that he never at any time courted her; never addressed her as a suitor for her hand, made any promise, or persuaded her; never used or offered violence; that the favors he received from her were granted without objection and with apparent willingness.

The bill of exceptions states that the testimony of these two witnesses was all the evidence as to the circumstance of the sexual intercourse between the parties, or as to their acquaintance. The evidence showed that the respondent became pregnant, and was delivered of a child. The court, among other instructions to the jury, gave the following:

"Seduction is the wrong of inducing a female to consent to unlawful intercourse by enticement and persuasions overcoming her reluctance and scruples. There must be reluctance on the woman's part to commit the act, and her consent must be obtained by flattery, false promises, artifice, urgent importunity based on professions of attachment, or the like, otherwise there is no seduction in the proper sense of the word. Sexual intercourse accomplished by means of a promise of marriage is seduction. Therefore, if you shall find that the defendant did, through enticement or persuasion, or by artifice, urgent importunity based on professions of attachment, or by promise of marriage, or the like, overcome the plaintiff's reluctance and scruples, and thereby induced her to have unlawful intercourse with him, then you should find for the plaintiff, and assess her damages."

To the giving of this instruction the appellant's counsel ex-

cepted, and prayed the following instruction to be given the jury :

" The plaintiff cannot recover in this action, by reason of defendant's having sexual intercourse with her, nor by reason of any consequence of such intercourse, if such intercourse was had by him by force, against her will, and without her consent ; nor can she recover if the sexual intercourse between her and the defendant was with her consent, unless that consent was obtained by false promises, by some artifice or device by which she was deceived and misled. If she consented, with or without persuasion, merely to gratify her own or the defendant's lust, or that of both of them, or for the purpose of obtaining money for the favors she was granting to the defendant, she cannot recover, but the verdict must be for the defendant." Which the court refused, as asked, and to which the appellant's counsel also excepted. The case having been submitted to the jury, they returned a verdict in favor of the respondent for $3,000, upon which the judgment appealed from was entered.

The action was brought under Sec. 35 of the civil code, which provides that : " An unmarried female over twenty-one years of age may maintain an action as plaintiff for her own seduction, and recover therein such damages as may be assessed in her favor ; but the prosecution of an action to judgment by the father, mother, or guardian, as prescribed in Sec. 34, civil code, shall be a bar to an action by such unmarried female."

The effect of this statute was to give a right of action where none before existed. The action at common law, commonly known as an " action for seduction," was only, in fact, an action of trespass, or trespass on the case (authorities were not agreed upon that point), for the loss of services. The person entitled to the services of the party seduced could maintain the action, but none other could. (*Bartley* v. *Richtmyer*, 4 N. Y. 38.) The law gave no remedy to the parent for the mere seduction of his daughter, however wrongfully it might have been accomplished. Incontinence on the part of a young woman could not be made the foundation of an action against the

XIII. OREG.—**32.**

person who had tempted her, and deprived her of her chastity; but if she were living with her parent at the time of the seduction, and the seduction were followed by pregnancy and illness, whereby the parent was deprived of the filial services theretofore rendered to him, an action was maintainable against the seducer. (Addison on Torts, Sec. 1274, and note 1.) The foundation of the action was not based upon the seduction itself, but upon the loss of services. If the plaintiff consented to or connived at the seduction, he could not recover (*Seagar* v. *Sligerland*, 2 Caine, 219; *Smith* v. *Masten*, 15 Wend. 270); nor if he was guilty of gross negligence. The reason of this was that no party to a wrong could recover for an injury received in consequence thereof; and for the same reason, the female herself could not recover damages.

A parent, however, was not confined, in the recovery of damages, to the mere loss of services. The jury were authorized to give damages for the distress of mind he had sustained in being deprived of the society and comfort of his child, and by the dishonor received; and they could take into consideration the situation in life and circumstances of the parties, and say what they thought, from all the circumstances, was a reasonable compensation to be given to the parent.

The statute referred to, and under which the action was brought, has created a right of action in favor of the female where she is unmarried and over the age of twenty-one years; and the question arises as to how it should be construed. Under the former regime it was not important whether the party seduced consented or not. The injury to the master was the same. He lost the service and suffered the disgrace, and although the wrong was the result of the joint act of the servant and the seducer, it was several. All that was necessary was, that he did not contribute to it. But the statute has, in such cases, removed the objection that stood in the way of the participant's recovery of damages. Still, however, the intent of the legislature in adopting the said provision must be ascertained, in order to give it a proper construction. It must have intended that the woman, if over twenty-one years of age and

unmarried, could maintain an action for her own seduction in any case in which a parent could for the seduction of a child, or a guardian for the seduction of his ward; or else it was intended to give such right of action where the defendant was mainly in the wrong and the plaintiff comparatively guiltless; it was either the creation of a new right of action in favor of a debauched female, or vesting in her the same right of action to recover damages her parent or guardian would have had if she had been an infant daughter or under guardianship. If the latter construction is given to the provision, still I do not believe the same rule of damages would apply as in an action by a parent or guardian. In the latter case, the damages beyond the actual pecuniary loss only include the distress of mind sustained by the parent being deprived of the society and comfort of his child, and the dishonor he receives on account thereof. The suffering " in body, mind, character, and reputation" of the unfortunate daughter are not considered in connection with the subject of damages. Her ruin is not compensated for, except so far as it results in the parent's loss, or affects his honor. Besides, the awarding damages to him on account of these matters results from an arbitrary rule ; a rule which is not sustained by the analogies of the law, as shown very conclusively by Judge Bronson in *Bartley* v. *Richtmyer*, *supra.*

The section of the statute which gives the right of action only provides that the plaintiff may recover such damages as may be assessed in her favor. I suppose this should be construed to mean legitimate damages, and the case being *sui generis*, it leaves a wide scope for construction. If the section intends that such woman in any case of illicit sexual intercourse resulting in pregnancy can maintain an action against her paramour, the recovery should be confined to the actual pecuniary loss sustained. Such a rule would not be unjust to the man in any case. It would only be a fair apportionment of a burden arising from a mutual wrong. If, however, it is intended to include in all cases the loss of character and reputation of the woman, and the damages be estimated by a jury of men,

it would operate oppressively and perniciously. It would tend to the demoralization of the female sex; would be a reward for unchastity, which a class of adventuresses would be swift to profit by. If, on the other hand, the said section intends to enable an unfortunate woman, whose love and confidence have been gained and her consent to the sexual intercourse been secured through hypocrisy and artifice, to maintain an action for compensation in damages, she should not only recover for the pecuniary loss suffered, but also on account of her mental anguish, and loss of reputation and character. If such construction of the section of statute in question is, however, to obtain, there should be something more than a mere " reluctance " upon her part to commit the act. It should be a reluctance that enticements and persuasions could not overcome without the presence of some other potent influence ; such a state of facts should be proved as would convince a fair-minded person that she had been deceived and deluded, and that her submission was in consequence of such deception and delusion. To term coaxing and persuasion of a woman to yield to the lecherous embraces of a man " a seduction by artifice," would be a misnomer ; a virtuous minded woman would promptly spurn such approaches with indignation. And if the statute is to receive the construction last indicated—if a woman of mature years is allowed to recover damages for the loss of reputation and character in consequence of her having permitted a man to have carnal knowledge of her—she should be required to show that she had been prudent ; had exercised at least ordinary discretion; had sacrificed her virtue through an influence that was calculated to lead astray an honest minded female. An action for obtaining property fraudulently cannot be maintained without proof of facts calculated to deceive a person of ordinary prudence ; and how can a female a long way beyond girlhood claim to have been defrauded of that which every womanly instinct of her nature prompts her to set the highest value upon, by " flattery, false promises, artifice, urgent importunity, based upon professions of attachment," unless they are of such a character as are calculated to mislead an ordinarily prudent and virtuous minded woman ?

The individuality of the female sex has been materially advanced during the past few years; their knowledge of the world has been greatly improved, and their legal capacity enlarged. The notion that they belong to the weaker sex is only entertained by the credulous and unsophisticated. They are not easily beguiled, and should be held to a reasonable responsibility; and if allowed to maintain an action for their own seduction, and demand a large compensation for their loss of character, should be required to prove something more than mere importunity as the means through which it was accomplished. I have but little faith in the merits of such a law. It will be resorted to much more often by the unscruplous and wanton, than by the more womanly portion of the sex, although the latter should have the better right. The honest ones would be inclined to smother their disappointment and grieve over the wrong, while the unscrupulous portion would make it a matter of public parade and profit.

It is extremely difficult to determine what the legislature intended in giving a woman such a right of action. It prescribes no measure of damages, nor declares what shall constitute seduction; nor, as has been shown, does the construction given to the former law upon those subjects furnish any rule of interpretation. Seduction under that law meant no more than illicit sexual intercourse resulting in pregnancy, and the personal loss to the party in consequence of the act was not taken into consideration. The general right is given, but the extent of it, or the circumstances under which it can be exercised, are not prescribed.

This court must declare what the legislature did intend by the adoption of the provision, and that has to be arrived at by applying the general rules for the construction of statutes. It appears very clearly to me that if the legislature meant by seduction no more than the term implied as used under the former law, it could not have intended to allow the plaintiff in the action to recover more than the pecuniary loss she had sustained. The defendant might be justly required to reimburse the plaintiff for her loss of service, cost of medical attendance and ly-

ing-in expenses, although they were equally in fault; but I can discover no principle upon which she is entitled in such a case to recover for loss of character. She might be the greater sufferer, as a matter of fact—might subject herself to the obloquy of the community, while his conduct in the affair be palliated and condoned; but that is the fault, if it be a fault, of society, and not of the law. The latter reproaches each alike. I cannot believe, however, that the provision of statute intended any remedy in a case where the parties are equally guilty; but that it intended that the plaintiff should be fully compensated for her entire loss, when the defendant had been mainly instrumental in occasioning the wrong. It is not probable that the legislature would undertake to give a remedy where the wrong was mutual, or to give an incomplete one where the act was consummated by the chicanery of the defendant; but it also must certainly have intended to require the exercise of reasonable care and prudence upon the plaintiff's part to prevent so unfortunate a calamity. A woman who will not make reasonable efforts to defend her virtue, ought not to be heard to complain in a court of justice on account of its loss.

The evidence in this case, as shown by the bill of exceptions, furnishes an example of the absurdity of a different rule than has been indicated. The respondent had rooms at a lodging house; had only a slight acquaintance with the appellant; invited him there; he came, and on the same evening seduced and had carnal intercourse with her, and destroyed her reputation and character, which, in her complaint in the action, she prized at ten thousand dollars. The other rooms of the house were occupied, and if he had undertaken to rob her of a quarter of a dollar in money, and had exhibited as unmistakable evidence that such was his purpose, as he did of his intention to have sexual intercourse with her, she would very probably have aroused the whole household; but, as it was, she did not make a single outcry—not a scream even—but on the contrary begged him not to make so much noise, as it would attract the attention of those in the other rooms. The jury, upon such testimony, gave the respondent the verdict of three thousand dol-

lars; and, in my opinion, it was very unfortunate to the community that they did so. The law did not entitle her to it; and the precedent, I apprehend, will have a mischievous tendency; will be a greater encouragement to unchasity than restraint upon libertinism.

Under the construction of the provision of the statute given, the judgment appealed from cannot be sustained. The instruction given to the jury, and the refusal to give the one asked by the appellant's counsel, was erroneous. In view of the testimony in the case, general instructions were calculated to mislead the jury. They should have been told that the respondent could not recover, unless it appeared from the evidence that the appellant employed such artifice or deceit as was calculated to mislead a virtuous woman; that the respondent was misled and deceived in consequence thereof, and that she submitted to the sexual intercourse through the artifice or deception practiced upon her by the appellant.

The instruction that if the jury should find that the defendant did, through enticement, or persuasion, or artifice, &c., overcome the plaintiff's reluctance and scruples, and thereby induced her to have unlawful intercourse with him, then they should find for the plaintiff, was entirely too vague. The character of the reluctance and scruples required to be overcome should have been explained. The reluctance and scruples in such case might arise out of a consciousness that the act was immoral and wrong. If they were maintained from an apprehension of danger of exposure, or as a matter of expediency, overcoming them would be no evidence of seduction. Again, the character of the "enticement, persuasion, and artifice" employed is important. They must be of such a nature as would be likely to deceive and mislead a chaste woman, and have had that effect in the particular case. The part of the instruction asked by the appellant's counsel "that the plaintiff cannot recover in this action * * * * if the sexual intercourse between her and the defendant was with her consent, unless that consent was obtained by false promises, or by some artifice or device by which she was deceived and misled,"

was a very reasonable request.   I believe it is conceded that the substance of the other part of the instruction was given; this part, as I understand it, required the respondent to have been deceived and misled.   I do not think the instructions given covered that point.

The court should not have refused to instruct that it was necessary to the respondent's recovery that she was actually deceived and misled.   But the testimony, as shown by the bill of exceptions, did not authorize the court to give the instruction that was given.   There was no evidence that the respondent's consent was obtained " by flattery, false promises, artifice or neglect, or urgent importunity, based on professions of attachment."   She testified that she never did consent.   It looks to me as though the most of said instruction was given upon a speculative basis: an instruction should be warranted by the proof.

I have no doubt but that the evidence as to the seduction would be sufficient, under the law as it now stands, to authorize a recovery upon the part of a parent or guardian for the infringement of their rights ; and that if the case were of that character, the instructions would be substantially correct as given ; but where the action is brought by the party herself, for her own seduction, and to recover damages for her ruined virtue, she cannot obtain such a recovery unless she has been despoiled of it by means that overcame her power of resistance ; that it must be something more than the enticements, persuasions, flatteries and professions of attachment which the opposite sex are very apt to practice, as every woman of ordinary understanding well knows.

Virtue would soon be a rare thing if it depended upon the civil law for its maintenance ; nor does the latter undertake any such duty.   It gives a remedy for a civil injury ; but will not suffer a party to recover damages against the other for the commission of an act in which they both participated, unless the commission of the former was procured by the circumvention of the latter.   It opens wide the door of justice to the unfortunate female who has been misled and deceived, her chas-

tity destroyed and character ruined, by the arts and wiles of an unscrupulous knave; but closes it against those who have trifled away their virtue and good name—have sacrificed them by their imprudence and neglect, and failed to put forth reasonable endeavors to preserve them when assailed.

STRAHAN, J.—I concur in the reversal of the judgment, and will briefly state the grounds thereof. Counsel for the appellant insist that the court instructed the jury outside of the evidence—gave them some mere abstract propositions of law, which, however correct in a proper case, had no application to any facts which the evidence tended to prove ; and that the same was therefore misleading. I will, therefore, proceed to examine this objection.

The only evidence on the part of the plaintiff is her own, and the substance of it is as follows : That she was twenty-eight years old, and unmarried ; that she first met the defendant in the parlor of the Jackson House, a hotel in Dalles City, in April, 1882, at which time he was introduced to her by Mrs. Cleek ; that at the time of his introduction to her he merely saluted her in the usual manner, and after remaining in the parlor a very short time went out; that a few minutes thereafter he came again into the parlor, when he and plaintiff had a few words of commonplace conversation, but nothing of such importance as to impress itself on her memory ; that the next time she saw him was in June, and under the following circumstances : Plaintiff was taking dinner at a restaurant on First street, in Dalles, when defendant came into the restaurant, and recognizing her, spoke to her, simply passing the time of day, and there was no further conversation between them, and that defendant left the restaurant before she did ; that the same afternoon she met him on Second street, near the Palace Lodging House, and they again passed the time of day. He said he was going to Portland or somewhere down that way ; talked about the weather, and asked her where she lived. She told him she lived in the Palace Lodging House, gave him the number of her room, and asked him to call upon her. That

evening he and Walter Looney—a person with whom she was slightly acquainted, called upon her at her room. Looney remained only a few minutes, but defendant remained until 8½ or 9 o'clock; probably staid two hours, conversing with her; that at one of these interviews, but at which one she did not remember definitely, she went with defendant and had some ice-cream; that at the time he called with Looney he said he was on his way below, would be back in two weeks on his way home to Prineville, and would then call upon her. That in two weeks or so he returned from below, and as she was informed called to see her in the afternoon, but she was not in; that on the same evening he called upon her at her room, and remained an hour and a half or two hours, and in course of conversation said he was going to Prineville, and would be back to the Dalles in about four weeks; that in all these interviews he treated her respectfully, and behaved himself " like a perfect gentleman "; that the next time she saw him was on or about the first day of August, 1882, at which time he called upon her at her room, Looney again being with him'; that Looney remained but a short time, and after he left, defendant proposed to go and get some beer, to which she replied " she did not care for any "; that defendant did go and get some beer, and both he and she drank some, she drinking but little, and defendant drinking an entire glass; that then the defendant grabbed her and fought with her, and she protested and fought until she had no strength; that during the struggle defendant promised to marry her and made every promise, but she still refused to yield to him or consent to his embraces, and defendant had sexual intercourse with her; that while she and defendant were struggling and fighting he made considerable noise, and she begged him not to make so much noise, because the other rooms in the lodging-house were occupied, and the noise would attract the attention of those in such other rooms; that she didn't know how long defendant staid, but that it was not until morning, and that during the time he had sexual intercourse with her again, the particular circumstances of which she did not remember; that the next evening the defendant called again

and spent the evening with her in her room, but nothing improper occurred during that call, but that he promised to come back and marry her; that defendant never did have sexual intercourse with her, except on the one night, and under the circumstances hereinbefore related ; and that she never did, to her recollection, consent to have sexual intercourse with the defendant; that she did not undress herself at the time, and that defendant did not pay her any money on that occasion ; and that he never did pay her any money except $20 or $30 at Portland ; that pregnancy and the birth of a child followed said intercourse.  She also testified that before her meeting with the defendant she had been twice married and twice divorced, and had borne two children as the fruits of said marriages.  Based on this evidence and this alone, the court, amongst other things, charged the jury as follows :  "Therefore, if you shall find that the defendant did, through enticement or persuasion, or by artifice, urgent importunity based on professions of attachment, or by promise of marriage or the like, overcome the plaintiff's reluctance and scruples, and thereby induced her to have unlawful intercourse with him, then you shall find for the plaintiff and assess her damages.

There was no evidence before the jury of any " enticement " or " persuasion," " artifice," or " urgent importunity based on professions of attachment," and therefore the court erred in charging the jury these were matters which they had a right to consider.  This charge assumed that there was evidence on the several subjects before the jury which they had a right, and that it was their duty, to consider.  The instruction, in a proper case, where there is evidence to justify it, undoubtedly states the law correctly; but as applied to the facts of this particular case it was clearly erroneous, and its only effect was to mislead the jury.  The court ought to have confined its charge to the particular facts appearing in evidence.  These only the jury had a right to consider; but when the court went beyond them, the necessary effect of such a charge was to lead the minds of the jury to consider the additional facts referred to by the court, and which do not elsewhere appear in the case.

A reference to some of the authorities bearing on this question will better illustrate the rule. In *Hirshburg* v. *Strauss*, 64 Cal. 272, the court charged the jury on the subject of exemplary damages, in a case where there was no evidence on that subject. The Supreme Court reversed the judgment, saying : " There was no evidence of any character to justify the court in submitting to the jury any question relating to exemplary damages. On this point the charge was entirely abstract, and was calculated to mislead the jury."

So in *Clement* v. *Boone*, 5 Ills. App. 109, it is said : " An instruction that submits it to the jury to find if a certain fact exists, virtually tells them that there is evidence tending to prove such fact ; and if there is no evidence tending to prove it, the instruction is calculated to mislead the jury, and is erroneous."

And the same rule is in effect stated in *Tantum* v. *Tantum*, 5 Ills. App. 598; *Board of Trustees* v. *Misenheimer*, 78 Ills. 22 ; *St. Louis A. T. H. R. R. Co.* v. *Manley*, 58 Ills. 300 ; *Oxley* v. *Storer*, 54 Ills. 159 ; *Hamilton* v. *S. Mf'g Co.*, 54 Ills. 370 ; *Jordan* v. *Headman*, 61 Pa. St. 176 ; *State* v. *McCurry*, 63 N. C. 33 ; *Karriger* v. *Greb*, 42 Mo. 44 ; *American Express Co.* v. *Parsons*, 44 Ills. 312.

So in *Bank* v. *Hubbard*, 8 Ark. 183, it was held erroneous to instruct the jury that a loan of depreciated bank paper by the bank was or was not usurious, when there was no evidence that the note sued upon was given for a loan of such paper. Such instructions are abstract.

The like rule was applied in the *American Transportation Company* v. *Moore*, 5 Mich. 368. It is there said : " There was no evidence showing or tending to show a written contract of the kind mentioned in that charge, and the charge was therefore improper, as tending to mislead the jury."

The same principle is also enunciated and appled in *Dula* v. *Cowles*, 4 Jones L. (N. C.), 519 ; *Montgomery, Admin'r*, v. *Evans*, 8 Ga. 178 ; *Manwell* v. *Briggs*, 17 Vt. 176 ; *Herndon* v. *Bryant*, 39 Miss. 335 ; *Oliver* v. *The State*, 39 Miss. 526 ; *Henderson* v. *Stiles*, 14 Ga. 135; *Atkins* v. *Nicholson*, 31 Mo. 488. These citations might be greatly extended, but it is un-

necessary. The principle is believed to be without an exception that whenever a trial court charges the jury upon matter which is material to the cause, and upon which there is no evidence, the charge is necessarily erroneous and misleading. Such instructions may be sound as abstract propositions of law, but their obvious and necessary effect is to draw the minds of the jury from what is, to what is not, in the case.

The alleged promise of marriage was of course before the jury, but its value as an element or means of seduction under the circumstances disclosed by the plaintiff's evidence was but slight. The plaintiff says she never did consent. If she did not, then she was not seduced, and the defendant, if he forced her, ought to have been tried for an offense under the criminal statutes ; but if she would listen to or be influenced by an offer or promise of marriage under the circumstances she says this one was made, it would look more like the vulgar bargain of one prompted by her own criminal desires, than the yielding of reluctant virtue, on the faith of what could be regarded by her as an honorable contract of marriage. (*People* v. *Clark*, 33 Mich. 112.)

Lord, C. J., dissenting.—There are many things said in the opinion of my associates to which I assent ; but we must administer the law from the record. The action is brought under section 35 of the code of civil procedure, by an unmarried woman over twenty-one years of age, to recover damages for her own seduction by the defendant. The main, and in fact only, assignment of error necessary to be considered is, that the court misdirected the jury in the following instructions:

" Seduction is the wrong of inducing a female to consent to unlawful sexual intercourse, by enticements and persuasions, overcoming her reluctance and scruples. There must be reluctance on the woman's part to commit the act, and the consent must be obtained by flattery, false promises, artifice, urgent importunity based on professions of attachment, or the like, otherwise there is no seduction in any proper sense of the word. Sexual intercourse accomplished by means of a prom-

ise of marriage is seduction. Therefore, if you shall find that the defendant did, through enticement *or* persuasion, *or* by artifice, urgent importunity based on professions of attachment, *or* by promise of marriage, or the like, overcome the plaintiff's reluctance and scruples, and thereby induced her to have unlawful intercourse with him, then you should find for the plaintiff, and assess her damages."

For a definition of seduction we must consult the common law. It was remarked in a late case by Kelly, C. B., that: "It has been truly said the action of seduction was founded on a fiction; but for that fiction there must be some foundation, however slender, in fact. In order to entitle a plaintiff to maintain the action, there must be in some shape or other the relation of master and servant existing between the plaintiff and the person seduced, at the t¹me when the seduction takes place." (2 Moak's Eng., R. & Am. notes, to *Hedge* v. *Tagg* )

At common law the action for seduction was grounded solely on the relation of master and servant, and the gist of the action is the loss of service; although to establish such relationship only slight evidence is required, and the extent of the loss of service is not the measure of damages. In reality, the object of the action is to afford redress for an injury done to the parent, or other person occupying such relation. (*Coon* v. *Moffett*, 2 Pennington, 583 ; S. C., 4 Am. Dec. 403, note ; Am. note to *Farmer* v. *Joseph*, 3 E. C. L. 181 ; 3 Sutherland on Dam. 735.)

But the injury done by the seduction to the parent or master differs in its nature from the injury done to the party seduced. And in so far as this difference exists, necessarily there must be a difference in the grounds of the action in the two cases, but no further. To the parent, or person standing in *loco parentis*, it can make no difference, so far as the right to maintain the action is concerned, that the injury was accomplished by force, or that the party seduced contributed to the injury. (*Damon* v. *Moore*, 5 Law, 405 ; *Kennedy* v. *Shea*, 110 Mass. 150.) But when a right of action is given to a female herself, the fact that she was a voluntary party to the injury must, on principle, go in bar to a civil action on her part for damages.

Beyond this, however, there would seem to be no reason why in such civil action there should be any modification of the elements which constitute seduction.

"The word 'seduce,'" said Storrs, C. J., "although a general term, and having a variety of meanings according to the subject to which it is applied, has, when it is used with reference to the conduct of a man towards a female, a precise and determinate signification, and is universally understood to mean an enticement of her on his part to the surrender of her chastity by means of some art, influence, promise or deception calculated to accomplish that object, and to include the yielding of her person to him, as much as if it was expressly stated." (*State* v. *Bierce*, 27 Conn. 319.)

"Seduction" is the wrong of inducing a female to consent to unlawful sexual intercourse by enticements and persuasions overcoming her reluctance and scruples." (Abb.'s Dict.)

"But the word 'seduction,'" said Cole, J., "when applied to the conduct of a man toward a female, is generally understood to mean the use of some influence, promise, arts, or means on his part, by which he induces the woman to surrender her chastity and virtue to his embraces. But we do not suppose it must appear any dishonest promise was made to the female, to consent to the sexual intercourse. It is sufficient that the means used do accomplish the seduction and induce the female to consent to the sexual intercourse. * * * * But the woman must be tempted, allured, and led astray from the path of virtue through the influence of some means or persuasions employed by the man, until she freely consents to the sexual intercourse." (*Crogham* v. *State*, 22 Wis. 444.)

Now the objection of counsel to the instruction is chiefly directed to the specification of the means of the seduction. It is contended that by the use of the disjunctive in the latter part of the instruction, the court charged the jury that persuasion alone was enough to constitute seduction, and entitle the plaintiff to damages, if the jury should find that by means thereof the defendant did overcome the reluctance and scruples of the plaintiff, and thereby induce her to have sexual intercourse with

him. Such, counsel insist, is not the law. That persuasion is not enough of itself, as a means of accomplishing seduction, unless it is accompanied or conjoined with some further and distinctive element of fraud, or artifice, or false promise, by which the virtuous instincts and scruples of the female are overcome, and she is misled or deceived.

" The words ' entice,' ' solicit,' and ' persuade,' as used in the pleadings in an action, and as acted upon by the courts, have a well defined meaning ; they import an initial, active and wrongful effort." (*Nash* v. *Douglass,* 12 Abb. Pr. [N. S.] 190.)

The persuasion, designed and calculated to despoil innocent womanhood of its virtue, must be essentially false or wrongful. This is its distinctive element. Its power lies in the false lights with which it allures and shipwrecks virtue—as an act, voice, look and gesture may all combine to render its spell more potent, and the charm of its influence more deceptive. A persuasion which is wrongful, that accomplishes its object—that succeeds in corrupting the mind and in defiling the heart of a pure woman, overcomes her scruples and blinds her sense of loyalty to duty and honor, and thereby induces her to surrender her chastity and virtue upon the couch of dishonor—does mislead, deceive, seduce. As a means of seduction, it is one of the most potent factors in accomplishing that result.

" It is enough," said McKinney, J., " that by any means or arts he tempted or persuaded his victim to surrender her chastity." (*Reed* v. *Williams,* 5 Sneed, 580.) Here, as in the cases already cited, and others presently to be referred to, persuasion is recognized as a sufficient means of seduction. When, therefore, the court said to the jury : " If you shall find that the defendant did, through enticements or persuasions, or by artifice, etc., overcome the plaintiff's reluctance and scruples, and thereby induced her to have unlawful intercourse with him, then you shall find for the plaintiff, and assess her damages," there was no error committed. The court, in specifying the means of seduction, has used no terms not warranted by the books. (See note to *Weaver* v. *Bachert,* 44 Am. Dec. 159 ;

*Stevenson* v. *Belknap,* 6 Iowa, 97; *Gover* v. *Dill,* 3 Iowa, 340.)

But the concurring opinion, while admitting the correctness of the instruction as an abstract proposition of law, raises the objection that it is not applicable to the evidence, and is therefore misleading.   To this, I am likewise unable to assent upon this record.   The bill of exceptions does not purport to contain all the evidence.   It simply certifies that " the foregoing evidence is, in brief, the substance of all the evidence introduced by either party as to the manner and circumstances of the sexual intercourse."   There is no pretense that it contains all the evidence of the means used to bring about and accomplish the seduction.   It is only the " substance," " as to the manner and circumstances " of the act.   It may be admitted that the instructions of the court should be based on the evidence, and not on the facts of which there is no evidence.   And unless the record discloses otherwise, we are bound to assume the court has performed its duty, and that there was evidence to which the instruction was applicable.

In *State* v. *Tom,* 8 Or. 178, Boise, J., said: " It does not appear from the bill of exceptions whether or not all the evidence that was before the court has been reported to this court. * * * If all the evidence adduced in the court below in the trial of their challenges is in the bill of exceptions, that fact should be stated; and as it is not stated, we must presume that the circuit court had sufficient evidence to support its findings." (See also *State* v. *Jackson,* 9 Or. 457.)

As it is not stated that this bill of exceptions contains all the evidence, we must presume the instructions were waranted by the evidence.

Again, there is no such assignment of error.   Nor at the argument was there any suggestion that the instruction was erroneous, for the reason that there was no evidence of persuasion to which it could apply.   The exception to the instruction was general—that it did not state the law—and the argument was that persuasion as a means was not sufficient of itself to accomplish seduction, and that the instruction was therefore

XIV. OREG.—**33.**

erroneous and injurious. The sufficiency of this assignment of error and the argument upon it, I have already sufficiently considered.

And, lastly, if the instruction was not applicable to the facts for want of evidence of persuasion, the attention of the court should have been called specifically to the point claimed as error. As the exception to the instruction was general, it simply challenged the correctness of the law as stated in the instruction, and which in the concurring opinion is admitted correct in the abstract; but failed to suggest or point out wherein the court was wrong, and give it an opportunity to obviate counsel's objection. "It is a wholesome rule," said Church, C. J., " that the attention of the court must be drawn to the precise point intended, otherwise an exception will not avail." (*Schile* v. *Brokhahus*, 80 N. Y. 620.) If the instruction laid down no erroneous principle of law; was a correct exposition of the law as to the means by which seduction might be accomplished; by a mere general exception the court could not know the point counsel intended to raise, or in what the error consisted. In fact, in that form it was calculated to mislead the court, and conceal the real objection relied upon as error.

In *Jones* v. *Osgood*, 6 N. Y. 235, the court say : " The exceptions did not call the attention of the judge to the points which were claimed to be erroneous. They did not suggest to his mind what the counsel excepting would have him hold, or wherein his charge was wrong. (See, also, *Kearney* v. *Snodgrass*, 12 Or. 316.)