[No. 7483. *En Banc.* March 3, 1910.]

EDNA MURRILLA, *Respondent,* v. SAMUEL GUIS, *Appellant.*[1]

TORTS—EVIDENCE—SUFFICIENCY—SEDUCTION—PLEADING—VARIANCE. Under a complaint making a general charge of seduction, the evi-dence shows an actionable wrong, even if not a technical seduction, and there is no fatal variance between the pleading and the proof, in the absence of a motion to make the complaint more specific, where the plaintiff's evidence showed a case of rape in the first instance, the relations were continued under a promise of protection by reason of her frame of mind produced by the first ravishment until pregnancy arose, which was avoided by abortive means pro-vided by the defendant.

SEDUCTION—DEFENSE—PREVIOUS CHARACTER. Previous chaste char-acter is not a condition precedent to a civil suit for seduction.

WITNESSES—IMPEACHMENT—INSTRUCTIONS. Under an instruction to the jury that if a witness testified falsely in one thing they should reject her testimony as to all matters wherein she is not cor-

[1]Reported in 107 Pac. 378.

roborated, false testimony is not shown by an apparent contradiction between her answers to interrogatories and her testimony, where the question of contradiction depended upon the construction to be placed upon certain words, and the answers to the interrogatories were made on the advice of an attorney in the belief that they were truthful.

SEDUCTION—EVIDENCE—CORROBORATION—NECESSITY. Corroboration of the plaintiff's testimony is not necessary in a civil action for seduction.

SAME—CORROBORATION. There is corroboration of plaintiff's testimony that she was seduced by the defendant, the proprietor of a dance house in which she worked, where it was shown that he paid unusual attention to her and had opportunities, that he purchased drinks for her at different times, was with her in a bed room and had drinks with her there, and that she made complaints at about the time, and there was trouble between them.

CHADWICK, MOUNT, and CROW, JJ., dissent.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered March 16, 1908, upon the verdict of a jury rendered in favor of the plaintiff, for damages for seduction. Affirmed.

*G. C. Israel*, for appellant.
*Parker & Brown*, for respondent.

ON REHEARING.

FULLERTON, J.—This case was heard originally at the October session of the court in 1908, and an opinion written affirming the judgment of the court below. The opinion will be found in 51 Wash. 93, 98 Pac. 100. Subsequently a rehearing was granted, and the cause reargued at the May term of 1909. At the rehearing counsel for appellant presented with great force and ability his objections to the judgment urged at the former hearing, particularly the objections that the verdict is against law, and that the evidence is insufficient to justify the verdict.

But first we will notice the contention that the evidence failed to establish the allegations of the complaint, in that

it failed to show that the respondent was seduced; the precise objection being that the evidence tended to prove rape, if it tended to prove anything, and not seduction. Answering this objection at the former hearing, the chief justice, who pronounced the opinion of the court, used this language:

"Undoubtedly the testimony of respondent tended to show a case of rape in the first instance. She testified that appellant called at her room and brought wine with him, insisting that she should drink with him, which she did; that soon after drinking she lost consciousness and, upon recovering consciousness, she was lying upon her bed and appellant was sitting beside her; whereupon she discovered that she had been ravished. The above, it is true, tended to establish rape only; but she proceeded to testify that, a day or two following the occasion specified, appellant again called and insisted that she should yield to him, which she consented to do because of his promise to protect her and also because of the feeling that she was already ruined and she did not care what became of her. She says that their relations were afterwards repeatedly continued under those circumstances for several months, during which time a condition of pregnancy arose which was afterwards avoided by abortive means provided by appellant. We think the above showed a *prima facie* case of seduction. The artifices used by appellant, taken all together, had the effect to overcome her scruples at a time when she was capable of consenting, and did consent, and not the least of those artifices was the method used the first time which left her in a frame of mind to be afterwards easily influenced to yield to his demands."

It seems to us now that this sufficiently answers the objection. Manifestly there was here shown an actionable wrong. The seduction shown did not consist solely of the ravishment. This was only one of the several means used to accomplish the seduction. Nor do the proofs depart so far from the allegations of the complaint as to constitute a variance. The charge in the complaint was general. The means used to accomplish the seduction were not set out with particularity. Doubtless the appellant could, by a proper motion at the proper time, have had them made specific, but since

he did not do so the respondent was entitled, under the
pleadings as they stood, to show the acts constituting the
seduction.

Again, it is insisted that the respondent was not of that
chaste character that would permit of her seduction. It is
urged that her profession and conduct was such that it is
too much to suppose that she could have maintained her
virtue in the presence of her admitted environment; also that
she was of such unchaste character, because of her conduct
and speech, that she was incapable of being seduced, even
though prior to the time she had sexual intercourse with the
appellant she had not had sexual intercourse with other men.
But the first contention we think was for the jury. It is
possible, though perhaps it be not overprobable, that a
woman may take part in dance hall performances even in
Alaska and not be a prostitute. Whether this was the ex-
ceptional case was a fact that the jury had the privilege
of determining from the evidence, and the court ought not
to be hasty in setting up its judgment against theirs. From
the second proposition we differ *in toto*. We do not believe
that man has an unbridled license to drug and carnally
know and thereafter by promises of protection induce a
woman to have further carnal knowledge with him merely
because she may be unchaste in speech, indiscreet in conduct,
and an actress performing in a dance hall. The cases cited
by counsel as sustaining this contention go to the full length
under the facts they present; but, with one exception, they
are criminal cases where previous chaste character is a con-
dition precedent to a conviction. For the civil action of
seduction, under our statute, previous chaste character is not
made a prerequisite. Any woman may maintain an action
for her own seduction whether or not she be of previously
chaste character. The civil case cited, *Breon v. Henkle*, 14
Ore. 494, 13 Pac. 289, is so wide in its facts from the case
at bar as not to be in point. We feel, therefore, that our
former conclusion on this branch of the case is just.

The contention that the verdict of the jury is against law is founded on the claim that the jury disobeyed the instructions of the court. The court charged the jury that if they found that any witness testified falsely to any material matter then they should reject the testimony of such witness as to all matters and things wherein it is not corroborated by other witnesses; and, further, that the jury must be able to find that the evidence the respondent gave as to her seduction by the appellant was corroborated by some other evidence in the case before they could find in her favor; that they could not find seduction on the evidence of the respondent alone. It is argued that these instructions, whether right or wrong, became the law of the case, and that the respondent did in fact testify falsely, and there was in fact no corroboration of her testimony on the question of her seduction.

In support of the first proposition, the appellant calls attention to answers the respondent made to certain written interrogatories propounded to her prior to the trial of the cause, and her answers made to questions asked her while being cross-examined at the trial. But a careful comparison of her testimony convinces us that there was no such contradiction shown as to require us to find, as a matter of law, that the witness testified wilfully false at any stage of the proceeding. As her counsel well argues, whether or not there is a contradiction depends in a large measure upon the interpretation that is put upon the words used by counsel in framing the interrogatories. For example, he asks her if she did not "entertain" certain gentlemen in her sleeping apartments on certain occasions; if she did not do what was called "rustling for drinks" in certain dance halls; if she did not sell drinks in boxes in certain others; to each of which she answered, No. In her cross-examination at the trial she testified that at one place men came to her sleeping rooms and drank wine and beer there with her; that men would buy drinks for her at the dance halls mentioned, and

that the waiters sold drinks to persons in boxes with her, although she sold none herself.

It is plain that if by "entertain" it were meant the act of drinking wine and beer with men in her rooms, then she contradicted herself, while if it be meant by that word that she sustained criminal relations with men at that time and place, she did not do so. So with the phrase "rustling for drinks," if her acts of drinking with men in dance halls be "rustling for drinks," she testified falsely, while if it be meant that she by immoral acts induced men to buy drinks, she did not so testify. So, also, with the phrase "selling drinks," if it be meant thereby that she asked and persuaded men while in boxes to buy drinks, then she testified falsely, while if it be meant that she actually sold drinks herself, she did not so testify. Moreover, it was stated by her counsel that the answers to the interrogatories were given under his advice, after the respondent had stated to him fully and fairly all of her acts at the places to which the inquiries related, and that her answers were made on his advice in the belief that they answered the interrogatories truthfully. In view of these circumstances, it would be going too far, we think, to say that she had legally forfeited her right to recover for the wrongs suffered by her at the appellant's hands. As we said in our former opinion, it may be that the circumstances were such as to challenge the attention of the jury to a careful scrutiny of her testimony, but we conclude now, as we concluded then, there is no room to contend that the testimony presents a question to be determined as a question of law.

The second branch of this contention, namely, that there was no corroborating evidence as to the respondent's seduction by the appellant, seems to us also to be untenable. As a matter of law the respondent's evidence needed no corroboration in order to legally sustain a verdict in her favor. This is a civil action, and the respondent had the same right to have her naked testimony weighed by the jury as the

appellant had to have his testimony so weighed. But the court charged the jury that the respondent's evidence must be corroborated, and the appellant insists that this charge became the law of the case, and that unless this court can find sufficient corroborative evidence it must reverse the case and send it back for a new trial. But this burden is not upon us. The trial judge, at the time he instructed the jury to this effect, also instructed them that it was for them to say whether the respondent was corroborated by other evidence in the case, and thus committed himself to the doctrine that there was evidence corroborating the statements of the respondent. The question comes to us, therefore, like all other disputed questions of fact. We have not to inquire as to the weight and sufficiency of the corroborative evidence, but merely was there such evidence. We think there was corroborative evidence. It was admitted by the appellant that he was one of the proprietors of the house at which the respondent worked; he admits that he purchased drinks for her at different times; it was shown that he at one time took her to the cottage of another inmate of his house, and was with her in the bedroom while callers occupied the front part of the house, and that there he had drinks with her; it was shown that the respondent made complaint to a friend of his treatment of her about the time she now alleges the act of seduction occurred, in which she cried over her trouble and bemoaned the fact that she could never marry; and a witness for the appellant testified that he was told at Juneau of trouble between the respondent and the appellant. While other circumstances might be pointed out, this evidence, it seems to us, sufficiently sustains the judgment on the point in question.

From the nature of the offense, the victim of the seduction and the appellant are, of course, the only persons who can testify to the actual occurrences. The occurrences were had in secret, and if it be the rule that a woman wronged under these conditions must produce an eyewitness to the overt

act, then truly no recovery can ever be had for crimes of this character. Opportunity to commit the act, undue and unusual attention on the part of the seducer to the seduced, remorse on the part of the victim, and concurrent complaints of the wrong may not be strong corroborative circumstances, but they tend in that direction. It must be remembered that the appellant is not being prosecuted for crime. It is not a question of his guilt beyond a reasonable doubt. The case is merely a civil action at law to be determined by the preponderance of the evidence. It is one, moreover, in which the appellant has the right to have the evidence weighed by a jury and not by the court, and when the verdict is sustained by substantial evidence, this court but usurps its functions and deprives a litigant of a fundamental right when it assumes to override the jury's verdict. Other questions suggested are sufficiently discussed in our original opinion. The judgment is affirmed.

PARKER and DUNBAR, JJ., concur.

RUDKIN, C. J. (concurring) — Whether the testimony shows a technical seduction may well be doubted, but it tends to show an actionable wrong sufficiently covered by the allegations of the complaint, and I therefore concur in the judgment.

MORRIS and GOSE, JJ., concur for the reason stated by RUDKIN, C. J.

CHADWICK, J. (dissenting)—I dissent. Appellant was the proprietor of a dance hall and house of prostitution and should be punished for his misdeeds, but his fine should go to the state and not to one of his employees. A careful reading of the testimony has convinced me that respondent was not seduced or raped or assaulted in mind or body, but that she maintained illicit relations with appellant and with others, of her own free choice. She had been a voluntary inmate of similar dives in Portland, Oregon, and in Seattle. Her associates and companions were, and had been, disreputable and

outcast women.    The verdict, if sustained, must rest, as the majority opinion impliedly admits, upon respondent's own naked testimony.    Her showing is that she was raped, not seduced, and if there were aught to commend her utterance the verdict should not be questioned.    But the rule is old and will not be denied, that a woman of evil repute is of questionable credibility.    "She could not have ruthlessly destroyed that quality upon which most other good qualities are dependent, and for which, above all others, a woman is reverenced and respected, and yet retain her credit for truthfulness unsmirched."    *State v. Coella*, 3 Wash. 99, 28 Pac. 28. Aside from respondent's occupation, she was, in my judgment, thoroughly impeached on the trial.    Her protestations of innocence and outrage, although overcome by every circumstance, every probability, and every presumption attending the trial, have been measured by the standards of chastity, moralty, and virtue.    The case should not have been submitted to the jury.

MOUNT and CROW, JJ., concur with CHADWICK, J.